# United States District Court
## District of New Mexico

## Document Verification

**Case Title:** Salazar, et al. v. USA
**Case Number:** 04cv00067  CR 00-1395 JP
**Office:**

### Document Information

**Number:** 19

**Description:** MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION recommending movant's 2255 motion be denied (cc: all counsel*)

**Size:** 13 pages (35k)

**Date Received:** 12/14/2004 01:19:05 PM    **Date Filed:** 12/14/2004    **Date Entered On Docket:** 12/14/2004

### Court Digital Signature    View History

16 cd c5 9b c0 3b 78 a1 a1 4c d0 26 fd 14 7d 08 26 8c f0 fd f3 c7 a9 1d ea 16 89 70 dd fb 2f 6b 94 8d 1d 0f 02 56 a2 5d ae 96 89 37 c3 89 20 83 4c 25 4f 0d a5 40 72 ea e5 02 e4 6f eb 8b b6 14 17 7b f8 19 44 1d b8 52 f6 88 15 30 42 51 13 4f 1e 48 6d 21 a8 8a e5 ab fd 78 8f 7e 34 4e 69 39 8a df 6f 3d 19 7b c3 c5 f8 7a 2c cf ab 0d 5e bc fa ab 74 f2 2a 95 4f 6a 42 77 50 79 c2 fb 04 b0

### Filer Information

**Submitted By:** Julie K. Fritsch

**Comments:** RECOMMENDED FINDING by Magistrate Judge Leslie C. Smith Recommending that Defendant's Petition for Writ of Habeas Corpus be denied.

**Digital Signature:** The Court's digital signature is a verifiable mathematical computation unique to this document and the Court's private encryption key. This signature assures that any change to the document can be detected.

**Verification:** This form is verification of the status of the document identified above as of *Tuesday, December 14, 2004*. If this form is attached to the document identified above, it serves as an endorsed copy of the document.

**Note:** Any date shown above is current as of the date of this verification. Users are urged to review the official court docket for a specific event to confirm information, such as entered on docket date for purposes of appeal. Any element of information on this form, except for the digital signature and the received date, is subject to change as changes may be entered on the Court's official docket.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

vs.

JAVIER SALAZAR,

    Defendant-Movant.

No. CIV 04-0067 JP/LCS
No. CR 00-1395 JP

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court upon Defendant Salazar's Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 filed January 23, 2004. (Doc. 1). Defendant was incarcerated until approximately September of 2004, at which time the Court received notice that Defendant was to be deported to Mexico. In his Motion, Salazar attacks the Conviction entered on April 11, 2001 and the Sentence entered on December 31, 2001 in the case styled *United States of America v. Javier A. Salazar*, CR 00-1395 JP, United States District Court for the District of New Mexico. The United States Magistrate Judge, having considered the Motion, record, relevant law, and being otherwise fully advised, finds that Defendant's Motion is not well-taken and recommends that it be **DENIED**.

### I.    Proposed Findings

1.    Defendant was indicted for one count of knowingly possessing, with intent to distribute, less than 500 grams of cocaine in violation of 28 U.S.C. § 841(a)(1), 28 U.S.C. § 841(b)(1)(C), and 18 U.S.C. § 2, and one count of knowingly possessing, with intent to distribute, more than 500 grams of cocaine in violation of 28 U.S.C. § 841(a)(1), 28 U.S.C.

§ 841(b)(1)(B), and 18 U.S.C. § 2. The incidents for which Defendant was indicted took place on May 17, 2000 and June 3, 2000 respectively.

2. Defendant's trial began on April 9, 2001 and on April 11, 2001, the jury returned a verdict of Not Guilty as to Count I (the May 17, 2000 sale), and Guilty as to Count II (the June 3, 2000 sale). The Presentence Report calculated Defendant's Criminal History Category at 1 and his Offense Level at 24, thus yielding a guideline imprisonment range of 51-63 months.

3. On November 26, 2001, the Defendant filed a sentencing memorandum and motion for downward departure. In this motion, Defendant sought: 1) a two-level reduction based upon acceptance of responsibility, and 2) an additional reduction of three levels based, in part, upon "aberrant behavior" and "imperfect entrapment." (Def. Mem. at 7) (contending that "the Defendant's mental and emotional conditions were hindered due to the closed head injury" and that Defendant was "subsequently found to be suffering from depression and anxiety for which he is currently on medication.").

4. The District Court imposed judgment on December 3, 2001, granting a two-level reduction based upon acceptance of responsibility, adjusting Defendant's Total Offense Level from 24 to 22, and sentencing Defendant to a term of 41 months imprisonment to be followed by a three-year term of supervised release. Although the Court did not expressly depart downward based upon the psychiatric arguments made in Defendant's motion, it did recommend that Defendant, "serv[e] [his] sentence at a Federal Medical Center, where [he] can receive treatment for the continuing problems from closed head injury and depression." (Judgment at 2).

5. On January 2, 2002, Defendant timely filed a notice of appeal. On appeal, Defendant argued: 1) the District Court's response to the jury's written question regarding the

2

term "inducement" constituted plain error; and 2) the Court plainly erred in giving an *Allen* charge to the jury, after the jury advised the Court it was having difficulty reaching a verdict. In an unpublished opinion dated January 24, 2003, the Tenth Circuit Court of Appeals rejected both arguments. In its opinion, the Court found that the District Court's giving an *Allen* charge to an apparently deadlocked jury was not, under the circumstances, impermissibly coercive. *United States v. Salazar*, Slip Op. No. 02-2018 (10th Cir. 2003), at *5-6. The Tenth Circuit further held, in connection with the "inducement" question, that "under the totality of the circumstances, we fail to detect 'error,' which was 'plain error' and affected 'substantial rights,' let alone 'plain error' that 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* at *7. The Court therefore affirmed Defendant's conviction.

6. On January 23, 2004, Defendant filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. The § 2255 Motion, filed within one year of the Judgment and Sentence, is timely under the Antiterrorism and Effective Death Penalty Act. *See* 28 U.S.C. § 2255. The United States then filed two unopposed motions to extend the time to respond to the Defendant's petition. The Court granted both motions.

**II.  Analysis**

7. Petitioner raises the following issues in his federal petition:

    I.    Ineffective Assistance of Counsel

    II.    Prosecutorial Misconduct

**Ineffective Assistance of Counsel**

8. Defendant raises several alleged errors in arguing that his trial counsel was ineffective. To establish ineffective assistance of counsel, the Defendant must show that his

counsel's representation: 1) fell below an objective standard of reasonableness; and 2) that he was prejudiced by counsel's failure. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *see also Ellis v. Hargett*, 302 F.3d 1182, 1186-87 (10th Cir. 2002) (citing *Strickland's* two-part test). In evaluating the first prong of the *Strickland* test, judicial scrutiny of counsel's performance must be highly deferential, and courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance. *Strickland*, 466 U.S. at 689. In assessing whether counsel's performance was "objectively reasonable," a reviewing court must take care to "avoid the distorting effects of hindsight" and must instead, "reconstruct the circumstances of counsel's challenged conduct . . . and evaluate the conduct from counsel's perspective at the time." *Minner v. Kirby*, 30 F.3d 1311, 1316 (10th Cir. 1994).

9.  If a defendant can establish trial counsel's performance fell below an objectively reasonable level, he must still establish, under the second prong of *Strickland*, a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. It is not enough for a defendant to show merely that the errors had some conceivable effect on the outcome of the proceeding. *Id.* at 693. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Miles v. Dorsey*, 61 F.3d 1459, 1475 (10th Cir. 1995) (citing *Strickland*, 466 U.S. at 700).

### a. Failure to Present a Mental Health Defense

10. Defendant first argues that trial counsel was ineffective because she decided to advance an entrapment defense and decided not to advance a psychiatric defense, which counsel felt would harm her client's credibility with the jury. Mr. Salazar is correct in asserting that trial

4

counsel has a duty to fairly investigate a defendant's case in order to assert appropriate defenses and that this duty includes a responsibility to ascertain whether a defense of mental incapacity is warranted. *Williamson v. Ward*, 110 F.3d 1508, 1517 (10th Cir. 1997). The reasonableness of a failure to investigate a defendant's mental problems must be determined on a case-by-case basis. *Id.* at n.11; *see also Miles v. Dorsey*, 61 F.3d 1459 (10th Cir. 1995), *cert. denied* 516 U.S. 1062 (1996) (finding counsel was not ineffective, in spite of the failure to investigate an incompetency or insanity defense).

11. I find that, in the present case, counsel's failure to further investigate a potential mental health defense was reasonable. Mr. Salazar's defense attorney did review the psychological evaluation of Dr. Juan Sosa, who opined that Defendant showed evidence of memory deficits, coping skill difficulties, and some physical symptoms, which were potentially related to a closed head injury suffered in 1998. (Pl. Ex. A). After reading this report and meeting with Mr. Salazar, defense counsel determined that it would not be useful to pursue a psychiatric defense at trial. (Aff. of Bernadette Sedillo, ¶ 8). However, defense counsel did believe that Defendant's injury might be a sentencing factor in the event he was convicted. (Id.) As trial counsel explained in her affidavit, she chose not to pursue a "psychiatric defense" because:

> [W]henever I met with Mr. Salazar, he struck me as being lucid and coherent . . . [w]hen listening to the Government's tape recordings of Mr. Salazar's drug-related conversations with the CI, Mr. Salazar again sounded lucid, coherent, and fully aware of the rather complex nature of the drug transactions.
>
> . . .
>
> Finally, I believe that advancing a "psychiatric defense" would have

5

> harmed our credibility in the eyes of the jury. I knew the jury was
> going to see and hear tapes of Mr. Salazar conducting drug transactions
> .... If we had mixed up our "entrapment/inducement" defense with
> what I thought would have been an unconvincing "psychiatric defense,"
> I believe we would have fallen outside the small area of credibility
> we had to present to the jury.

12.     Trial counsel's decision not to pursue what she reasonably believed to be a dubious defense falls within the "wide range of reasonableness" outlined by the Tenth Circuit. *See Minner*, 30 F.3d at 1317. Ms. Sedillo was faced with tape recorded evidence of her client's lucid and detailed narcotics sales. She thus decided not to risk alienating the jury through the presentation of unconvincing psychiatric arguments. (Sedillo Aff. at ¶ 8). Defendant has not established that trial counsel's decision, which earned him a Not Guilty verdict as to the May 17, 2000 cocaine sale, was objectively unreasonable.

13.     Even if Defendant could establish that trial counsel was objectively unreasonable, he has not shown that he was prejudiced thereby. To establish prejudice from ineffectiveness of trial counsel, Mr. Salazar must demonstrate that, but for counsel's errors, there is a reasonable probability that the result of the proceedings would have been different. *Strickland*, 466 U.S. at 687. A reasonable probability is a probability sufficient to undermine confidence in the outcome of a trial. *Id.*

14.     As evidence of prejudice, Mr. Salazar points to "protracted jury deliberations .... only resolved after an *Allen* instruction." (Def. Resp. at 11). Defendant argues that, because the jury initially professed to be having difficulty reaching a verdict, there is a reasonable probability that the presentation of evidence of a psychological impairment would have resulted in a different verdict. Although there is a possibility that the outcome of the trial would have been different had

6

additional evidence been presented, Defendant has failed to show a probability that the outcome would have been different.[1] As such, Defendant has failed to show prejudice and objective unreasonableness and his claims should be rejected under both prongs of *Strickland*.

15.     Defendant raises the related claim that trial counsel was ineffective because she failed to retain an expert witness to present testimony on mental health issues. Because I recommend finding that counsel was within her discretion to not pursue a mental health defense, I do not believe it is necessary to consider whether counsel was ineffective for not presenting testimony about the defendant's mental health. I believe this claim must also fail under the *Strickland* analysis.

**b.     Failure to Pursue Pre-Trial Motion to Suppress Evidence**

16.     Mr. Salazar further argues that his counsel was ineffective for failing to raise a motion to suppress the fruits of the June 3, 2000 search of his vehicle. The evidence presented at trial demonstrated that law enforcement had probable cause to stop Defendant's vehicle and to believe that cocaine was hidden inside the vehicle. Indeed, based upon the CI's accurate tip, the agents not only knew that the defendant was hauling the cocaine, but knew where inside the vehicle to search. (Trial Transcript ("Tr") at 131-132). After Defendant's vehicle had been lawfully stopped, probable cause to search the vehicle was independently furnished when a service canine alerted agents to the presence of drugs. (Tr. at 196). The agents, despite having cause to search the vehicle, nevertheless obtained Defendant's written consent to search. (Tr. at 134). The stop, search and seizure were thus valid and trial counsel was neither objectively

---

[1] Furthermore, Defendant's contentions regarding jury deliberations are purely speculative. It is possible that the jurors had no difficulty reaching a verdict of guilty as to Count II and could not reach a verdict as to Count I.

7

unreasonable, nor did she cause Defendant prejudice, by failing to pursue a baseless argument. *See United States v. Gutierrez-Hermosillo*, 142 F.3d 1225, 1231 (10th Cir.1998). Defendant's argument in this matter should be rejected.

### c. Failure to Object to Expert Testimony

17. Defendant next argues that trial counsel should have objected to "improper expert testimony" given by Sgt Dennis Romero, a Las Cruces Police Officer. Defendant objects specifically to Sgt. Romero's testimony as to the training of police officers, to what Sgt. Romero observed during the first drug meeting (Tr. at 94), and to the fact that Defendant and the CI seemed to be "acquaintances" based on Sgt. Romero's observations. (Tr. at 63). It does not appear that Sgt. Romero was testifying as an expert witness at trial. Sgt. Romero did not attempt to assist the jury with scientific, technical or other specialized knowledge, nor was he ever designated as an "expert" by the trial court. *See* FED. R. EVID. 702. Sgt. Romero testified as to the usual procedures used by police officers in narcotics investigations and to his observations of the Defendant. *See* FED. R. EVID. 401 and 701.

18. Even assuming that trial counsel should have objected to Sgt. Romero's observation that Defendant and the CI appeared to be acquaintances, Defendant cites no authority for the proposition that such an error overcomes the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Further, even if counsel's failure to object to Sgt. Romero's testimony was objectively unreasonable, Defendant has offered nothing to demonstrate a reasonable probability that, but for counsel's failure to object to the testimony, the result of the proceeding would have been different. Defendant's arguments on counsel's failure to object should fail.

8

### d. Failure to Object to Improper Vouching

19. Defendant next asserts that Sgt. Romero's testimony improperly vouched for the credibility of the confidential informant and that trial counsel erred in failing to object to this improper vouching. The issue of improper vouching arises in the context of expert testimony and occurs when the expert offers testimony which does nothing but vouch for the credibility of another witness. *United States v. Velarde*, 214 F.3d 1211 (10th Cir. 2000). Such testimony encroaches upon the jury's vital and exclusive function to make credibility determinations and therefore, does not assist the trier of fact as required by Rule 702 of the Federal Rules of Evidence. *Id.* Defendant contends that Sgt. Romero's testimony constitutes improper vouching to which counsel should have objected.

20. As discussed above, Sgt. Romero's testimony does not constitute expert testimony under the meaning of the Federal Rules of Evidence. Further, it does not appear from the trial transcript that Sgt. Romero in fact vouched for the credibility of the confidential informant. Sgt. Romero made no statement directly for or against the credibility of the confidential informant. Under these circumstances, counsel's failure to object to Sgt. Romero's testimony regarding the confidential informant was not objectively unreasonable, and Defendant has not established that he was prejudiced by the failure to object within the meaning of *Strickland*. Therefore, Defendant's contention on the issue of improper vouching should fail.

### e. Failure to Object to an *Allen* Charge

21. Defendant's final allegation of error with respect to ineffective assistance of counsel is that his trial counsel acted unreasonably in failing to object to an *Allen* charge delivered by the Court, that he was prejudiced by this failure, and that, had counsel objected to the *Allen*

9

charge, the jury would have reached a different verdict. According to Defendant, the jury in the present case deliberated for approximately four hours, at which time it informed the court it had been unable to reach a verdict and was sent home for the evening. (Def. Pet. at 11). In the morning, the jury returned and was given a modified *Allen* charge by the court. (Id.) At some point during deliberations, Defendant contends the jury informed the court it was deadlocked. Defendant states he has demonstrated he was prejudiced by counsel's failure to object because, "following the *Allen* charge, the jury returned with an inconsistent, split verdict." (Id.). This contention should be rejected.

22. Defendant does not argue that the District Court erred in giving the *Allen* charge. In fact, the Tenth Circuit has already considered, and rejected, Defendant's argument that the District Court erred in giving this charge. *United States v. Salazar*, Slip. Op. No. 02-2018 (10th Cir. 2003), at *5-6. Rather, Defendant asserts that trial counsel was in error by failing to object to the *Allen* charge and that this error prejudiced Defendant. Although Defendant states he was prejudiced by trial counsel's alleged failure, he has not stated how he was prejudiced. Conclusory allegations of prejudice are insufficient to establish that Defendant was actually prejudiced. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that even pro se parties must allege sufficient facts on which a recognized legal claim can be based, and that conclusory allegations will not suffice). The Tenth Circuit has already found that the District Court did not err by giving the modified *Allen* charge. Because Defendant has not shown he was prejudiced by counsel's failure to object to the *Allen* charge, I recommend finding that counsel did not err in failing to object to the charge.

**II.    Prosecutorial Misconduct**

10

23. Defendant also alleges that the prosecution suppressed favorable evidence at trial, specifically evidence that could have been used to impeach the confidential informant, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Defendant also claims that the confidential informant was provided with an improper contingent fee by the government, which amounted to improper or outrageous misconduct. (Pet. at 13-14).

24. The Defendant's claims regarding prosecutorial misconduct are barred from consideration by this Court under Tenth Circuit precedent. Defendant attempts to raise these issues for this first time in his federal habeas petition. Defendant's direct appeal concerned only: 1) whether the District Court's response to the jury's written question regarding "inducement" constituted plain error; and 2) whether the Court plainly erred in giving an *Allen* charge. Defendant made no argument regarding prosecutorial misconduct on direct appeal.

25. A Defendant who fails to present an issue on direct appeal is barred from raising that issue in a § 2255 motion, unless he can show cause for his procedural default and actual prejudice resulting from the alleged errors, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed. *United States v. Allen*, 16 F.3d 377, 378 (10th Cir. 1994) (citing *United States v. Frady*, 456 U.S. 152, 167-68 (1982)). Defendant argues that, because counsel was ineffective on direct appeal, this fact excuses his failure to raise prosecutorial misconduct as an issue on appeal. This contention should fail.

26. Not only did Defendant make no reference to prosecutorial misconduct in his direct appeal, he makes no attempt, in his present motion, to establish either "cause for his procedural default" or the "actual prejudice" he has sustained. *Allen*, 16 F.3d at 378. Defendant further fails to show that "a fundamental miscarriage of justice will occur if his claim[s] [are] not

11

addressed." *Id.* Although Defendant makes conclusory allegations as to how he has been prejudiced, he has not provided this Court with anything tending to support his allegations. *See Hall*, 935 F.2d at 1110. Therefore, I recommend finding that Defendant's claims of prosecutorial misconduct are procedurally barred from review by this Court.

## RECOMMENDATION

Having reviewed the record in this case, all applicable law, and being otherwise fully advised, I recommend that Defendant's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2255 be **DENIED**. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to § 636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102. A party must file any objections within the ten day period if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**